(971 P.2d 754)

No. 78,529

ST. CATHERINE HOSPITAL OF GARDEN CITY, KANSAS, *Appellee*, v.
PAUL M. RODRIGUEZ, M.D., *Appellant*.

Opinion filed December 24, 1998.

*Geary N. Gorup* and *Albert L. Kamas*, of Render, Kamas & Hammond, L.C., of Wichita, for the appellant.

*Steven C. Day* and *Chris S. Cole*, of Woodard, Blaylock, Hernandez, Roth & Day, of Wichita, for the appellee.

Before LEWIS, P.J., KNUDSON, J., and STEPHEN R. TATUM, District Judge, assigned.

LEWIS, J.: This action began as a forcible detainer action filed by St. Catherine Hospital of Garden City (Hospital) to force defendant, Paul M. Rodriguez, M.D., to remove his medical equipment from the hospital. The Hospital was successful with its detainer action, and that action is not an issue on appeal.

During the course of the forcible detainer action, Dr. Rodriguez filed a number of counterclaims against the Hospital. The trial

court granted summary judgment on each counterclaim in favor of the Hospital. Dr. Rodriguez appeals.

There were three counterclaims raised against the Hospital: one for breach of contract or breach of an implied duty of good faith, one for misrepresentation, and one for defamation and business disparity. The question we must decide is whether the trial court erred by granting summary judgment in favor of the Hospital.

Dr. Rodriguez is a radiologist who began working for the Hospital in the early 1970's. He was given the exclusive right to do all the radiology work for the Hospital and owned the MRI and CT scanners which were used by the Hospital. The parties entered into a written agreement relative to their respective rights and obligations.

In early 1994, the Hospital began to question whether it should replace the equipment of Dr. Rodriguez as well as replacing Dr. Rodriguez himself. The Hospital hired a company called ECRI to evaluate the situation with regard to the radiology department. ECRI did a study of the Hospital's radiology department, and its report was not complimentary either of the department or Dr. Rodriguez. Generally speaking, ECRI found a number of complaints directed at the radiology department. The ECRI report also found Dr. Rodriguez' equipment was aging and inadequate and concluded it was not viable as compared with new equipment.

Armed with the ECRI report as well as other information received from other employees and physicians, the Hospital gave Dr. Rodriguez written notice that it would terminate the radiology department on a date certain. The notice was given to Dr. Rodriguez considerably more than 90 days prior to the termination date. Dr. Rodriguez apparently refused to vacate the premises, and that resulted in the current action being filed as one for forcible detainer.

Our standard of review in a case where summary judgment has been granted and is appealed from is well known:

"Appellate review of a district court's grant of summary judgment is governed by well-established rules. The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, dep-

ositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A defendant is entitled to summary judgment if the defendant can establish the absence of evidence necessary to support an essential element of the plaintiff's case. [Citations omitted.]

"When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. [Citations omitted.] In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.

"To have evidentiary value, the particular document or testimony relied upon by the party opposing summary judgment must be probative of that party's position on a material issue of fact. [Citation omitted.] Probative evidence is that which 'furnishes, establishes or contributes toward proof.' [Citation omitted.] On appeal we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]" *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998).

With that standard of review firmly in mind, we will examine the trial court's decision on each of Dr. Rodriguez' counterclaims.

## BREACH OF CONTRACT

Dr. Rodriguez sets forth a breach of contract claim that is based on the premise that Kansas recognizes a duty of good faith and fair dealing in every contract. He argues that the Hospital did not terminate his agreement in good faith and that it contrived with ECRI to obtain a false and misleading report on the radiology department which it relied upon to terminate the agreement. He suggests that the question of good faith was a material question of fact in this case. We agree that whether the good faith standard was met is a question of fact. *Hartford v. Tanner*, 22 Kan. App. 2d 64, 69, 910 P.2d 872 (1996). We conclude that the trial court correctly resolved the issue in favor of the Hospital.

"Kansas courts imply a duty of good faith and fair dealing in every contract. [*Kansas Baptist Convention v. Mesa Operating Limited Partnership*, 253 Kan. 717, 726, 864 P.2d 204 (1993).] The *Baptist* court noted that ' "if one exacts a promise from another to perform an act, the law implies a counterpromise against arbitrary or unreasonable conduct on the part of the promisee." ' [Citation omitted.] Employment-at-will contracts are the only exception to the good faith obligation currently recognized in Kansas. [Citation omitted.]" 22 Kan. App. 2d at 71.

The problem with Dr. Rodriguez' breach of contract cause of action is that the Hospital terminated the agreement precisely within the terms of the parties' agreement. That agreement read: "[T]his contract may be terminated by [appellee or appellant] *at any time, without cause, by giving written notice of such termination to the other party not less than ninety (90) days prior to the selected termination date.*" (Emphasis added.)

There are explicit clauses in some agreements that, in effect, eliminate any implication of good faith and fair dealing. For instance, when an agreement permits a termination, *without cause,* by the giving of 90 days' notice, the parties ought to be bound by this agreement. From the date the agreement was signed to the date termination was given, Dr. Rodriguez was well aware that the Hospital could terminate his agreement at any time without cause by giving him 90 days' notice. If no cause was necessary, then it is largely irrelevant whether the Hospital acted in good faith or bad faith. It was not required to have a valid or fair reason to terminate. The only requirement was the giving of 90 days' written notice. To hold that the right to terminate *without cause* can only be exercised in good faith simply rewrites the agreement of the parties.

As noted in the quote from *Hartford v. Tanner* above, employment at will contracts are excepted from the good faith obligation in Kansas. We consider that an agreement of this nature which permits termination without cause is similar in nature and impact to an employment-at-will contract, and we think the exception to the good faith obligation should also apply to an agreement of this nature.

Dr. Rodriguez can expect no more than he secured to himself in the agreement. The Hospital gave him the notice required in the agreement, and we consider its motivation in giving that notice to be largely irrelevant. We hold that when an agreement provides for termination by either party, without cause, by the giving of a written notice within a specified time and the agreement has been terminated precisely as required by its terms, the question of good faith and fair dealing becomes largely irrelevant, and a breach of the agreement cannot be proved by arguing that the implied duty of good faith and fair dealing was violated. The "no cause" provi-

sion in the agreement permitted the Hospital to be arbitrary or unreasonable in terminating Dr. Rodriguez' contract. Any other conclusion would require us to rewrite the agreement of the parties, and this we are not inclined to do.

In addition, we see no evidence of bad faith or unfair dealing on the part of the Hospital. The evidence shows that the decision to terminate the agreement was not solely based on the ECRI report. There were other considerations. There was no evidence to create a material question of fact as to the good faith or unfair dealing on the part of the Hospital. We hold that in terminating the agreement, the Hospital did not act unreasonably or unfairly. The trial court did not err in granting the Hospital summary judgment on the breach of contract counterclaim.

## MISREPRESENTATION

The counterclaim by Dr. Rodriguez for misrepresentation is a bit difficult to understand. It appears that he claims the Hospital's board of directors and employees made misrepresentations to ECRI, which were passed along to the board and reflected in its report.

The thrust of Dr. Rodriguez' claim is that others misrepresented facts which were later relied on by the board of directors in terminating his agreement.

We conclude that Dr. Rodriguez had no standing to bring an action for fraud and misrepresentation based on misrepresentations relied upon *by the board of directors of the Hospital.* " 'Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, *where another party justifiably relies on the statement and acts to his injury.'* " *Mahler v. Keenan Real Estate, Inc.,* 255 Kan. 593, 603, 876 P.2d 609 (1994). (Emphasis added.)

Dr. Rodriguez does not allege that *he* was deceived or misled by any misrepresentations. He claims, however, that the Hospital board was deceived and misled as was ECRI. The law, as set forth above, requires that a party seeking damages for misrepresentation must have personally been misled and must have personally relied

on the untrue statement. Dr. Rodriguez does not satisfy this requirement.

Whether Dr. Rodriguez' counterclaim was for negligent misrepresentation or fraudulent misrepresentation, it fails because there is no evidence that he relied on the misrepresentation allegedly made. We hold that under the facts, Dr. Rodriguez was not the real party in interest and could not prosecute the misrepresentation cause of action. See *Bank of Kansas v. Davison*, 253 Kan. 780, 783, 861 P.2d 806 (1993).

We hold the trial court did not err in granting summary judgment in favor of the Hospital on Dr. Rodriguez' counterclaim for misrepresentation.

## DEFAMATION AND BUSINESS DISPARAGEMENT

Finally, Dr. Rodriguez asserted a counterclaim against the Hospital for defamation, business defamation, and business disparagement.

The tort of business disparagement has not been recognized in Kansas, and this is a fact which is agreed to by Dr. Rodriguez. Although it has been recognized in other states, we decline to create a new tort in the state of Kansas. We believe that the tort of defamation is the gravamen of Dr. Rodriguez' counterclaim.

We defined defamation in *Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan. App. 2d 95, Syl. ¶ 5, 864 P.2d 744 (1993):

"Defamation is the communication to a person of false information tending to expose another living person to public hatred, contempt, or ridicule. Injury to one's sensitivities is not enough to support a claim for defamation; a plaintiff must show how his or her true reputation in the community of his or her residence has been affected."

Our review of the evidence shows that Dr. Rodriguez failed to controvert facts that allege that his true reputation in the community was not affected by statements by the Hospital's employees and physicians in the ECRI report.

The uncontroverted facts found by the trial court state:

"Defendant has no evidence that his reputation has been damaged. He admits that no physician has told him they [have] less respect for his abilities now. Nor have any hospital administrators told him that. As far as defendant knows, no

other physician has seen a copy of the ECRI Report. Defendant has not applied for and been denied employment because of the report. No one in the general public has indicated they have less respect for him now. Doctors that are critical of his equipment are still sending him business. Other than plaintiff, no hospital or physician has told him they would not continue to use him. He does not know of any witness who will testify that his reputation has been damaged."

Dr. Rodriguez replied to these uncontroverted facts by saying:

"Controverted. The fact of the vast diminution of the MR and CT business is evidence that referrals are not being made. As indicated, the report was readily available in the hospital and while other doctors may not have directly commented upon having read the report to Dr. Rodriguez, they have, nevertheless, taken the steps of reducing referrals."

In order to show defamation, one must prove that his or her reputation has been damaged in the community. We have reviewed the record and conclude that Dr. Rodriguez made no such showing. Supreme Court Rule 141 requires a "concise summary of conflicting testimony or evidence." (1998 Kan. Ct. R. Annot. 176.) The deposition testimony of Dr. Rodriguez does not conflict with the facts set out by the Hospital and adopted by the trial court. To defeat a motion for summary judgment, a party opposing the motion is not required to prove its case but must set forth specific facts showing that there is a specific issue for trial. *McCaffree Financial Corp. v. Nunnink*, 18 Kan. App. 2d 40, 56, 847 P.2d 1321 (1993). There is no evidence suggested by Dr. Rodriguez to show that his reputation was damaged in the community by the ECRI report. Accordingly, the trial court properly granted summary judgment on the cause of action for defamation.

Affirmed.