Richard SMITH, Wardah Muhammad, Dwayne McFadden, Larry McFadden, Tiffany McFadden and Ray Cole, Plaintiffs,

v.

MISSION ASSOCIATES LIMITED PARTNERSHIP, a Connecticut limited partnership, d/b/a Heritage Hills Apartments and Old Farms Management, Inc., Defendants.

No. 01–2416–JAR.

United States District Court,
D. Kansas.

Oct. 4, 2002.

Dan C. Sanders, Monaco, Sanders & Racine, Kansas City, MO, for Plaintiffs.

Todd W. Ruskamp, Stacey A. Campbell, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Defendants.

## *MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT*

ROBINSON, District Judge.

This matter is before the Court on defendants' Motion for Summary Judgment (Doc. 47). Plaintiffs have filed a response (Doc. 57) and defendants have filed a Reply (Doc. 65). Plaintiffs allege they were subjected to discrimination under the Fair Housing Act ("FHA") 42 U.S.C. § 3604(a)—(d), 42 U.S.C. § 3617, the Civil Rights Act of 1870, 42 U.S.C. § 1981 and § 1982 (" § 1981 and § 1982") and state claims of defamation and outrage. Having carefully considered the parties' arguments and applicable law, the Court finds that Mission Associates Limited Partnership's motion for summary judgment should be granted in part and denied in part.

### I. Standards for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to

judgment as a matter of law."[1] The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[2] Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[3]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.[4] Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.[5] "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."[6] Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[7] The court must consider the record in the light most favorable to the nonmoving party.[8]

## II. Facts

The following facts are either uncontroverted or, if controverted, construed in the light most favorable to plaintiffs as the non-moving party. Any immaterial facts and factual averments not properly supported by the record are omitted.

Heritage Hills is an apartment complex in Mission, Kansas, owned by Mission Associates Limited Partnership ("Mission Associates") and operated by Old Farms Management. Plaintiff Richard Smith ("Smith") is a white male who worked for Heritage Hills as a maintenance supervisor from September 1995 to March 2001. Plaintiff Wardah Muhammad, a/k/a Rose, ("Muhammad") is a white female, the girlfriend of Smith, who lived with him at Heritage Hills from May 1999 to March 2001. Plaintiffs Tiffani, Larry and Duane McFadden are the bi-racial children of Muhammad and lived with Smith at Heritage Hills. Plaintiff Ray Cole is a black male and the boyfriend of Tiffani McFadden.

Part of Smith's compensation as a maintenance supervisor was an apartment in Heritage Hills. Smith first lived in a one bedroom apartment. During his employment, Smith lived in four different apartments due to size accommodations for the person(s) living with him. The last move was to a three bedroom apartment in May 1999 in order to accommodate Smith, his live-in girlfriend Muhammad and her three children, one of whom, Tiffani McFadden, lived with Smith for only a short time. Heritage Hills allowed Smith to move into a larger apartment in May 1999 and still gave him the free rent associated with his employment. Smith signed a month to month lease for the apartment, as was the policy for Heritage Hills' employees.

---

1. Fed.R.Civ.P. 56(c).

2. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

3. *Id.* at 251–52, 106 S.Ct. 2505.

4. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

5. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

6. *Id.*

7. *Id.*

8. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

Smith signed an addendum to a lease in 1997 at Heritage Hills agreeing that if his employment ended, he was required to vacate the property within two weeks. This addendum was not re-executed on the three bedroom apartment in 1999. Rather, Lana Snell, the on-site property manager at Heritage Hills, crossed out the apartment number on the 1997 form and replaced it with the apartment number for the three bedroom apartment. Snell then attached the altered addendum to the May 1999 three bedroom lease.

Plaintiffs allege that remarks and conduct of defendants created a hostile housing environment at Heritage Hills. Larry McFadden claims that Ryan Agee, the son of Lana Snell and a groundskeeper at Heritage Hills, told him that he didn't like "niggers." Larry McFadden also claims that Lana Snell made derogatory remarks about a black female employee. Duane McFadden claims that Lana Snell ordered him and his friends to leave the weight room at Heritage Hills because they were under 18 and unsupervised. Duane McFadden alleges that unsupervised white minors were not asked to leave. Heritage Hills required minors to be supervised by adults in the weight room. It is disputed whether a sign to this effect was posted when the McFaddens used the weight room. Plaintiffs claim that in the fall of 2000, Lana Snell and Ryan Agee accused Larry and Duane McFadden of breaking into cars at the complex and claimed that they suspected the McFaddens because "they were the only black children" living at Heritage Hills. Larry McFadden claims that Ryan Agee accused him of turning the complex into a "ghetto."

Smith claims that Lana Snell frequently made derogatory remarks about him. He alleges that Snell said that "Rick is half black," "Rick is a nigger lover," "Rick has sex with colored girls so his dick has turned black," "Rick sticks a sock down his pants," Rick had sex with black women in vacant apartments because "large butts [were] found in the carpet," and "how can you have sex with black women, yuck, that's nasty." Plaintiffs allege that Lana Snell frequently referred to African–Americans as "coloreds" or "spooks." Plaintiffs also allege that Lana Snell referred to the McFadden children as "mulattos" or "oreos."

Smith also claims that Lana Snell repeatedly said things about his sexual orientation. Smith claims that she said he was gay, that he was on the fence and that she told a gay tenant to "hit on" Smith because he was also gay. In December 2000, someone wrote "Rick is gay. 1/2 black too!" on a blackboard in the leasing office at Heritage Hills. Smith complained to Lana Snell in December about the blackboard. This statement remained on the blackboard until sometime in February 2001. Smith also claims he went to Lana Snell in January 2001 and complained about disparaging and harassing comments made by Snell.

On February 8, 2001, Smith was in an altercation with Ryan Agee. Ryan Agee struck Smith with a dowel rod that had a 16 penny nail at the end of it. Smith alleges that Ryan Agee accused him of turning the complex into a "ghetto" and that the fight was over trash strewn about the complex. Smith reported the incident to Snell and Snell told him to clock out for lunch. James Durham, the President of Old Farms Management and the general partner of Mission Associates, was contacted and discussed the incident with Smith. Smith did not return to work after February 8, 2001.

Smith received treatment for injuries sustained when Ryan Agee struck him with the dowel rod. An emergency room physician advised Smith to remain off work until February 12, 2001 and then to

follow up with a "worker's compensation care physician." Heritage Hills terminated Smith's employment on March 12, 2001. Between February 8, 2001 and March 12, 2001, Smith and James Durham exchanged numerous e-mails regarding his physical condition, his visits to a doctor, filing a worker's compensation claim and when he would return to work. On March 12, 2001, James Durham ("Durham") advised Smith that if he did not telephone Durham or come into work or provide a doctor's statement showing he could not work, he would be terminated at the end of the day. Smith did not contact Durham on March 12, 2001 and was subsequently terminated. Durham advised Smith, by letter, on March 15, 2001 that he was terminated and had two weeks to vacate the apartment. Smith did not receive an option to begin paying rent.

In August 2000, Tiffani McFadden and Ray Cole approached Debra Martinez, a Heritage Hills employee in the leasing office, about renting a one or two bedroom apartment. Debra Martinez told them that the only apartment available for viewing was not within walking distance of the leasing office. Pursuant to office policy or procedure, leasing agents were not allowed to transport potential tenants in their vehicles for liability reasons. Tiffani McFadden and Ray Cole were told that they would need to drive up to the apartment to view it and that Ms. Martinez would drive

her car up there and meet them. Tiffani McFadden and Ray Cole did not have a car to take to view the apartment. They left and did not return to view an apartment.

### III. Analysis

### A. Hostile Housing Environment Claim/Plaintiffs Richard Smith, Wardah Muhammad, Duane McFadden and Larry McFadden

Plaintiffs claim that defendants subjected them to a hostile housing environment in violation of the FHA, § 1982 and § 1981.[9] This claim is brought by plaintiffs Smith, Muhammad, Tiffani McFadden and Duane McFadden. To establish a claim of hostile housing environment, plaintiffs need to show that the "offensive behavior unreasonably interfere[d] with [the] use and enjoyment of the premises."[10] In analyzing a claim of hostile housing environment, the courts look to cases discussing Title VII hostile work environment for guidance.[11] As with a Title VII hostile work claim, actionable harassment "must be sufficiently severe or pervasive to alter the conditions of the housing arrangement."[12]

Plaintiffs allege direct evidence of discrimination based on race. Because direct evidence is alleged, the *McDonnell Douglas* burden shifting framework does not apply. The elements necessary for a prima facie case of hostile housing environ-

---

9. The pretrial order establishes that all of plaintiffs' claims, except the state law claims, are claims for housing discrimination. At no time in the complaint or pre-trial order does plaintiff bring an action under § 1981 for employment related harassment or discrimination. The elements of a § 1981 claim are 1) that the plaintiff is in a protected class, 2) that the defendant had the intent to discriminate on the basis of race, and that the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001). The protected activity here involves

plaintiffs' housing at Heritage Hills. Because these elements are covered in the elements needed to establish a § 1982 and FHA claim, they will not be discussed separately.

10. *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir.1993).

11. *Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir.1989).

12. *Honce*, 1 F.3d at 1090 (internal citations and quotations omitted).

ment are 1) plaintiffs are members of a protected class, 2) the conduct was unwelcome, 3) the conduct was based on the race of plaintiffs, 4) it was sufficiently severe or pervasive to alter the plaintiffs' living conditions and create an abusive environment and 5) defendant knew or should have known about the harassment.[13]

Plaintiffs' claims are based on race, despite the few alleged remarks about the sexual orientation of Smith. Sexual orientation claims are not actionable under the FHA or § 1982. Further, as to sexual harassment, plaintiff Smith has offered no evidence that he was harassed by defendants because of his sex.[14] Accordingly, the Court will review this claim as one for hostile housing environment based on race discrimination.

■ Plaintiffs have all established that they are members of a protected class. Larry and Duane McFadden are both bi-racial, being half black and half caucasian. Smith and Muhammad, while caucasian, have standing as a protected class based on their association with Larry and Duane McFadden and their status as "aggrieved persons." The United States Supreme Court has held that white, or other non-minorities, may bring an action under the FHA as well as Title VII when they are affected by discrimination against other tenants.[15] Smith and Muhammad need to be aggrieved parties to bring an action under the FHA. An aggrieved party is one who "claims to have been injured by

a discriminatory housing practice." [16] This is exactly the claim made by Smith and Muhammad. Defendants argue in both their original motion and reply that the plaintiffs' claim fails for lack of familial status. This argument is without merit. The Tenth Circuit, in *Mountain Side Mobile Estates Partnership v. Secretary of HUD*,[17] addresses exactly the same argument. In *Mountain Side*, the plaintiff was a man living with a woman, to whom he was not married, and her children. The defendants argued that he did not fit within the FHA's definition of familial status and thus could not assert a claim based on discrimination. Defendants here make an identical argument about Smith who lived with Muhammad and her children. The *Mountain Side* court found that familial status was irrelevant to the plaintiff's claim. Just as in that case, Smith has standing outside of any familial status with Muhammad because he is an "aggrieved person" and, thus, has a right to sue under the FHA.[18] Muhammad and her children do have familial status standing as persons under the age of 18 living with a custodial parent and as members of a protected class. Thus, the first element of a prima facie case is satisfied for all plaintiffs.

■ As to the second element, unwelcome conduct, Smith admits that he participated in the conversations, sometimes inappropriate for the workplace, at Heritage Hills. However, participating in joking or horseplay does not render all future such conduct welcome.[19] Instead, Smith now

13. *Reeves v. Carrollsburg Condominium Unit Owners Ass'n*, No. CIV.A. 96–2495RMU, 1997 WL 1877201, at *7 (D.D.C. Dec. 18, 1997).

14. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1537 (10th Cir.1995) (citations omitted).

15. *Trafficante v. Metropolitan Life Ins., Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972); *Gladstone Realtors v. Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979).

16. 42 U.S.C. § 3602(i).

17. 56 F.3d 1243 (10th Cir.1995).

18. 42 U.S.C. § 3610(a).

19. *Pascouau v. Martin Marietta Corp.*, 1999 CJ CAR 4272, 1999 WL 495621, at *6 (10th Cir. July 14, 1999).

has the burden of showing that a time came when he made others aware that their behavior was unwelcome.[20] Taking all of Smith's allegations as true, he did complain about the writing on the board and the inappropriate references to blacks. He also complained about the way he was treated by Ryan Agee and the altercation in which he was injured.

Plaintiffs must show that the harassment that created the hostile housing environment was based on race. All of plaintiffs' allegations involve a component of race. Comments made by Lana Snell about Smith and about the McFadden children all revolved around the bi-racial status of Muhammad's children. Comments made early on by Lana Snell involved references to Smith's prior girlfriend being black. Plaintiffs meet their prima facie burden here.

■ Plaintiffs must also show that the actionable conduct was sufficiently severe or pervasive to alter the plaintiffs' living conditions and create an abusive environment. The comments that Smith complains of happened while at work. Some of the conduct occurred within the leasing office and some occurred in the commons areas. The incident with Ryan Agee occurred in the commons areas. As for the instances within the leasing office, the office was open to all other tenants at Heritage Hills. It is possible that because of the multi-family dwelling living circumstances, that harassing conduct in the leasing office affected plaintiffs' housing environment. This is not to say that every incident of unpleasant behavior in the workplace extends to cause a hostile housing environment. However, special circumstances exist where the housing and work environment are one and the same. And, in this case, the persons accused of the offensive conduct were employees of plaintiffs' landlord.

Plaintiffs must be able to show that the conduct interfered with the use and enjoyment of their home. This is a question of fact to be decided by a jury. Plaintiffs make a prima facie case in showing that the harassment occurred in the commons areas of their apartment complex and in the leasing office, which was open to all tenants. Further, the accusations about the McFadden children being involved in car burglaries may have cast an undesirable light upon their reputation within the complex. A complex they had to come and go from on a daily basis.

■ Finally, to impose liability on Mission Associates and Old Farm Management, plaintiffs need to show that defendants knew or should have known about the conduct. Smith states that he complained to Lana Snell on more than one occasion. Smith states that he complained to Durham about the altercation with Ryan Agee. Additionally, one instance of conduct that Smith alleges came from Durham himself. Smith alleges that Durham warned him that there would be trouble in the complex if Muhammad and her children moved in. Smith claims that Durham said the trouble would come because of the children's bi-racial make-up. This is enough to establish that defendants knew of the complained conduct; as well as to establish that because the supervisor at the leasing office, Lana Snell, was aware and allegedly orchestrating the harassment, then Durham should have known.[21]

Thus, because the plaintiffs satisfy all elements of the prima facie case, defendants' motion for summary judgment is denied.

---

20. *Id.*

21. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

## B. Disparate Treatment Claim/Plaintiffs Richard Smith, Wardah Muhammad, Duane McFadden and Larry McFadden

■ Plaintiffs' second claim is for disparate treatment under the FHA, § 1981 and § 1982.[22] Plaintiffs allege that by evicting them without making an offer to remain and pay full rent, they were discriminated against because of their race. Because no direct evidence exists, the *McDonnell Douglas* burden shifting framework applies.[23] Under this framework, plaintiffs must establish a prima facie case of discrimination. Then, defendants must prove their motivation was legitimate and non-discriminatory. Finally, plaintiffs must show that the reason proffered by defendants is merely pretextual and that discrimination was the actual motivation.[24]

To establish a prima facie case, plaintiffs must show that 1) they were members of a racial minority, 2) that they applied for and were qualified to rent an apartment at Heritage Hills, 3) that they were denied the opportunity to rent, inspect or negotiate for an apartment at Heritage Hills and 4) the housing opportunity remained available.[25] As discussed above, plaintiffs meet the requirements of a protected class or racial minority. But, plaintiffs have failed to show that they attempted to negotiate for, offer to rent, make an application for or even inquire about remaining at the complex. Plaintiffs' complaint alleges that by receiving a notice to vacate their apartment, they were denied the opportunity to negotiate for an apartment. However, plaintiffs offer no evidence that they attempted to do so.

Case law cited by plaintiffs in support of their claim involves instances where the plaintiffs attempted to inspect, negotiate, apply for or contract for housing. Plaintiffs, in the case at hand, did not attempt to do so. After receiving a notice to vacate because plaintiff was no longer employed with Heritage Hills and the apartment was part of his salary, plaintiffs simply moved out without any attempt to rent another or the same apartment for normal rates.

Additionally, defendants offer proof of a legitimate reason for the vacate notice. Plaintiff Smith received a free apartment as part of his compensation as maintenance staff at Heritage Hills. After sustaining an injury in an altercation at work, which was compensated fully through a worker's compensation claim, he failed to return to work for six weeks despite many e-mail notices from his employer that he needed to telephone in, provide medical verification for his absence or show up to work. Plaintiff Smith did none of these things and was warned that if he did not report to work after the sixth week of absence, he would be terminated. Smith did not report and did not call in. He was subsequently terminated and with his termination his benefits of a free apartment ended.

Because plaintiffs cannot establish a prima facie case of disparate treatment; and, even if they could, defendants offer a legitimate, non-pretextual reason, summary judgment as to this claim is granted.

## C. Discrimination in Services and Facilities/Plaintiff Duane McFadden

■ Duane McFadden brings a disparate treatment claim under the FHA,

---

**22.** *See supra* n. 9.

**23.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**24.** *Id.*

**25.** *Asbury,* 866 F.2d at 1280.

§ 1981 and § 1982 for discrimination in services in that he was not allowed use of the Heritage Hills weight room. The Court need not delve deeply into each element necessary to establish this claim, as Duane McFadden cannot establish a prima facie case. To proceed with this claim, he must show that he was entitled to use of the facilities in connection with the apartment.[26] He cannot do this. Heritage Hills has expressed a clear policy that minors are not allowed to use the weight room unless accompanied by an adult, and after having paid a deposit fee and received a key to the facility. While there is some dispute over whether a sign was posted to this effect, it is immaterial. Even if a sign was never posted to inform patrons of the age requirement, that does not bestow upon Duane McFadden a right to use the facility, which is necessary to bring this claim. Duane McFadden has not offered any evidence that he attempted to use the weight room while accompanied by an adult or that he paid a deposit fee and had a key to the room.

Additionally, plaintiff has offered no support that white minors were using the weight room unsupervised and absent a deposit and key. This is also a necessary element to establish a prima facie case of discrimination.[27] Without this basic foundation, this claim cannot proceed and summary judgment is appropriate.

### D. Disparate Treatment/Plaintiffs Tiffani McFadden and Ray Cole

■ Plaintiffs Tiffani McFadden and Ray Cole claim that defendants discriminated against them when they sought to rent an apartment at Heritage Hills. The same proof is necessary to establish an FHA claim, § 1981 and § 1982 claim.

Again, the *McDonnell Douglas* burden shifting framework applies. To establish a prima facie case, plaintiffs must show that they are 1) a racial minority, 2) they applied for and were qualified to inspect or negotiate for the rental of an apartment at Heritage Hills, 3) they were denied the opportunity to inspect or negotiate for the rental of an apartment at Heritage Hills and that 4) the housing opportunity remained available.[28] If plaintiffs meet this burden, the defendant must offer a legitimate, non-discriminatory reason for their actions. Finally, plaintiffs must show that defendants' reason was a pretext for race discrimination.

In order to succeed on these claims, plaintiffs must also show a discriminatory intent.[29] Further, as suggested by defendants in the pretrial order, plaintiffs must show that they were denied the apartment, or opportunity to inspect the apartment because of race. However, race need not be the only motivating factor.[30]

Plaintiffs claim that they went to Heritage Hills to inquire about renting an apartment. While there, they claim they were not offered pamphlets of floor plans and were only offered a viewing of an apartment not within walking distance from the leasing office. Because of the apartment's location, the plaintiffs would have had to drive their own vehicle to the apartment, which they did not have with them. Plaintiffs did not see an apartment on their visit and did not re-contact the Heritage Hills' leasing office.

Plaintiffs must first establish a prima facie case before the burden shifts to defendants to produce a legitimate, non-discriminatory reason for their actions.

---

26. *Asbury*, 866 F.2d at 1280.

27. *Id.*

28. *Id.*

29. *Id.* at 1279.

30. *Id.*

Plaintiffs are members of a minority race. Tiffani McFadden is bi-racial, being half black and half caucasian, Ray Cole is black. While plaintiffs did not actually apply for an apartment at Heritage Hills, their presence there to negotiate for an apartment is sufficient. It is questionable whether plaintiffs have established that they were denied the opportunity to rent or inspect an apartment. Plaintiffs had the opportunity to view an apartment, but did not have a car available to drive to the location. Defendants' evidence by depositions is consistent in that the Heritage Hills employees are not allowed to drive potential tenants to view apartments for liability reasons. Plaintiffs have presented no evidence to show that this policy only applied to minority applicants. While plaintiff Smith offers testimony that several apartments are open at any given time, no other support is offered to show that at this particular time, any other apartments were available for viewing. Further, depositions given by plaintiff Tiffani McFadden and defendant's leasing agent, Debra Martinez, establish that Tiffani McFadden and Ray Cole were advised to come back with their vehicle to go and view the vacant apartment.

Plaintiffs have provided no evidence that race was a factor during their visit to Heritage Hills. As such, summary judgment is granted as to this claim for failure to establish a prima facie case.

### E. State Defamation Claim

 Plaintiff Smith claims that statements made by Lana Snell, as well as words written on the blackboard in the leasing office, caused injury to his reputation. An action for defamation includes libel and slander.[31] To show a prima facie case of defamation, plaintiff must show 1) uttering or publishing of false or defamatory words, 2) communicated to a third party and 3) those false and defamatory words exposed plaintiff to public hatred, contempt or ridicule, deprived him of social acceptance and/or resulted in harm to his reputation.[32] The key to proving a defamation action is showing injury to reputation.[33] In Kansas, damages to reputation are not presumed and must be proved regardless of the type of libel or slander.[34] However, "[i]njury to one's sensitivities is not enough to support a claim for defamation; a plaintiff must show how his or her true reputation in the community of his or her residence has been affected."[35]

*Prosser on Torts*, as recognized by the Kansas Court of Appeals, defines defamation "as an act which tends to injure reputation in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse derogatory or unpleasant feelings or opinions against him."[36] In *Moran*, the plaintiff avoided summary judgment on a defamation claim by showing that another employee avoided him after the derogatory statements were made.[37]

Smith alleges many derogatory statements were made by Lana Snell about the race of his girlfriends and their children, as well as about his sexual orientation. As set out in the facts above, Smith alleges that many of these statements were made

**31.** *Luttrell v. United Telephone Sys., Inc.*, 9 Kan.App.2d 620, 683 P.2d 1292 (1984).

**32.** *St. Catherine Hosp. of Garden City v. Rodriguez*, 25 Kan.App.2d 763, 971 P.2d 754, 758 (1998).

**33.** *Gobin v. Globe Publ. Co.*, 232 Kan. 1, 649 P.2d 1239 (1982).

**34.** *Id.*

**35.** *St. Catherine Hosp.*, 971 P.2d at 758.

**36.** *Moran v. State of Kansas*, 267 Kan. 583, 985 P.2d 127, 130 (1999) (internal citations and quotations omitted).

**37.** *Id.* at 133.

in front of other individuals, including fellow employees at Heritage Hills. He provides at least one supporting affidavit to this effect.[38] Sometime after the defamatory statements were made, someone at Heritage Hills wrote "Rick is gay. 1/2 black too!" on the blackboard at the leasing office. This is sufficient evidence to overcome summary judgment. Smith also alleges that the statements about his sexual orientation were involved in getting a homosexual tenant to "hit-on" him at the direction of Lana Snell.

In deciding summary judgment motions, the Court is to construe the facts in the light most favorable to the non-moving party. As such, Smith has made a prima facie case for defamation. The extent of damage, or actual existence of it, must be decided at trial as a material issue of fact. However, plaintiffs' allegations above and one supporting affidavit are sufficient to overcome summary judgment in that he alleges defamatory and false statements were made about him, they were communicated to third parties and he suffered damage, ridicule or a lack of social acceptance. Defendants' motion as to the claim of defamation is denied.

### F. State Outrageous Conduct Claim

■ Plaintiffs allege that the actions of defendants constitute outrageous conduct. In their Response to defendants' Motion for Summary Judgment, plaintiffs argue this claim on behalf of Smith, Muhammad and Larry and Duane McFadden. However, in the original complaint, this claim is only brought on behalf of Smith. An amended complaint was not filed and the Pretrial Order limits this claim to Smith.

Smith must establish that "(1) the conduct of defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a casual connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe."[39] There are two threshold requirements to this tort: "(1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, (2) whether the emotional distress suffered by the plaintiff was of such extreme degree the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it."[40] This conduct must be "utterly intolerable in a civilized society."[41] The Kansas Supreme Court has said that "[t]he classic test is that liability may be found to exist when the recitation of the facts to an average citizen would arouse resentment against the actor and lead that citizen to spontaneously exclaim, 'Outrageous!'"[42]

Smith alleges that the comments made by Lana Snell and the argument with Ryan Agee amount to outrageous conduct. The Court interprets these allegations in the light most favorable to Smith. However, even if the Court finds that the comments regarding Smith's sex life, sexual orientation and the race of his live-in girlfriend's children were extreme and outrageous, he cannot overcome summary judgment. To overcome a motion for summary judgment, Smith needs to present a genuine issue of material fact.[43] The claim of outrage requires that the conduct causes extreme and severe mental distress. In *Miller*, the court stated that "a lack of

**38.** Pl.Ex. 5, Steve Cordell Aff.

**39.** *Miller v. Sloan, et al.*, 267 Kan. 245, 978 P.2d 922, 930 (1999).

**40.** *Id.* (citations omitted).

**41.** *Id.*

**42.** *Fusaro v. First Family Mortg. Corp., Inc.*, 257 Kan. 794, 897 P.2d 123, 131 (1995).

**43.** *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

physical manifestation of injury fail[s] to meet the threshold requirements of the tort of outrage."[44]

While Smith states that he suffers from nightmares, humiliation, sadness, loss of sleep and anxiety (Pl.Ex. 6), he did not see a physician of any kind. Additionally, he is employed so the stress he alleges is not so severe to disrupt his daily life. While the alleged comments were offensive, the tort of outrage is difficult to establish and without an offer of proof of some type of physical symptoms from Smith establishing severe and extreme distress,[45] he cannot overcome a motion for summary judgment.

Defendants' motion as to the claim of outrage is granted.

**IT IS THEREFORE BY THIS COURT ORDERED** that the defendants' Motion for Summary Judgment (Doc. 47) is granted in part and denied in part as set out above.

---

44. *Miller,* 978 P.2d at 931. 45. *Id.*