OHIO CIVIL RIGHTS COMMISSION et al., Appellants,

v.

AKRON METROPOLITAN HOUSING AUTHORITY et al., Appellees.

[Cite as *Ohio Civ. Rights Comm. v. Akron Metro. Hous.*
*Auth.,* 170 Ohio App.3d 283, 2006-Ohio-6967.]

Court of Appeals of Ohio,
Ninth District, Summit County.

Nos. 23056 and 23060.

Decided Dec. 29, 2006.

Jim Petro, Attorney General, David A. Oppenheimer and Sharon D. Tassie, Assistant Attorneys General; Andrew L. Margolium, and Emily E. Warren, for appellants.

Michele Morris and Richard A. Green, for appellees.

CARR, Judge.

{¶ 1} Appellants, the Ohio Civil Rights Commission ("OCRC"), Fontella Harper, and Fair Housing Advocates Associates, Inc. ("FHAA"), appeal the decision of the Summit County Court of Common Pleas, which awarded summary judgment in favor of appellees, Akron Metropolitan Housing Authority ("AMHA") and June Davidson. This court reverses.

I

{¶ 2} This appeal is a result of AMHA's allegedly discriminatory handling of a bitter dispute between appellant Harper and her white neighbors at Van Buren Homes. Harper, a black woman, and her two sons moved into the Van Buren Homes rental housing development in 1991. Van Buren Homes is owned and operated by AMHA. Appellee June Davidson is the property manager at Van Buren Homes.

{¶ 3} In 1998, the Harper family moved to 254 Illinois Place, which is also located at Van Buren Homes. In 1991, the Kaisk family moved next door to the Harpers. Shortly after the Kaisks became the Harpers' neighbors, the two families began to engage in heated confrontations. Appellant Harper alleges that the Kaisk family would swear at members of her family and guests at her home, using racial epithets. Harper maintains that the name-calling, swearing, and shouting escalated to overt threats of violence towards her family.

{¶ 4} The origin of this dispute is traceable to October 2001. On October 1, 2001, Harper submitted a Resident Complaint Form ("RCF") to AMHA, in which she alleged certain facts that led to the filing of the complaint in this matter. Harper alleged that a series of incidents occurred on September 29 and 30, 2001, involving Harper, the Kaisks, Harper's cousin, and the cousin's daughter. Van Buren Homes' standard procedure was to refer all RCFs to the security department, which had a contract with both the Summit County and Barberton Sheriff's Departments.

{¶ 5} Moreover, the lease terms specifically provided:

The OWNER may terminate or refuse to renew the lease only for serious or repeated violations of material terms of the lease, including but not limited to failure to make payments due under the lease or to fulfill the TENANT obligations set forth in Section VII * * *.[1]

Despite this policy, Harper alleged that Van Buren Homes' management neither investigated nor resolved Harper's complaint regarding her neighbors' racial remarks and other harassing conduct. According to Harper, the harassment continued through January 2003. Harper alleged that her black guests were also victims. Harper testified through deposition that she filed numerous racial-harassment complaints verbally and in writing and gave them to June Davidson, but the complaints have just disappeared.

{¶ 6} In late 2002, the Kaisks applied for a hardship transfer out of Van Buren Homes on the basis that Harper and her relatives had threatened their lives.

---

1. Section VII requires the tenant to conduct himself or herself in a manner that "will not disturb their neighbors' peaceful enjoyment of their accommodations."

The requested transfer was granted, and the Kaisks moved out of Van Buren Homes.

{¶ 7} In February 2003, Harper contacted FHAA. Subsequently, both Harper and the FHAA submitted a charge affidavit with the OCRC. The charge affidavit asserted that the AMHA and one of its property managers, June Davidson, had violated Harper's fair-housing rights by tolerating tenant-on-tenant racial harassment in the Van Buren Homes complex and that AMHA had failed to take adequate, effective steps to end the harassment. The OCRC found probable cause of discrimination and filed suit. Harper and the FHAA intervened. Claims were asserted under the entirety of both the federal and Ohio Fair Housing Acts.

{¶ 8} The appellants and the appellees filed cross-motions for summary judgment and response briefs. The trial court awarded summary judgment in favor of appellees. The OCRC and appellants Harper and the FHAA filed notices of appeal. This court consolidated the appeals.

{¶ 9} The OCRC filed an appellate brief asserting three assignments of error. Harper and the FHAA also filed a brief setting forth three assignments of error. The assignments of error have been rearranged and some have been combined to facilitate review.

## II

### Harper and FHAA's Second Assignment of Error

A hostile environment claim may be premised on the fair housing act's interference clause, the terms and conditions clause, or the clause requiring housing to be available to all protected classifications.

{¶ 10} All six of appellants' assignments of error challenge the trial court's award of summary judgment in favor of AMHA. To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the nonmoving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the nonmoving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins* (1996), 75 Ohio St.3d 447, 449, 663 N.E.2d 639.

{¶ 11} This court finds that appellants Harper and FHAA's second assignment of error is dispositive of the appeal. Therefore, we will discuss it first.

 {¶ 12} In Harper and FHAA's second assignment of error, appellants argue that the trial court erred in not recognizing a cause of action for a hostile housing environment in Ohio. This court agrees.

{¶ 13} Appellees argue that the underlying action is nothing more than a dispute between tenants and that this type of dispute is not actionable under state or federal antidiscrimination laws. However, appellees fail to understand the point of appellants' claim. Appellees' argument focuses on the Kaisks' racist acts rather than on AMHA's apparent toleration of those acts. That toleration by AMHA arguably interfered with Harper's right to enjoy her lease.

{¶ 14} Both the federal and Ohio fair-housing acts guarantee equal terms and conditions for protected classes such as race. Section 3617, Title 42 U.S.Code and R.C. 4112.02. Ohio's Fair Housing Act provides:

It shall be an unlawful discriminatory practice:

\* \* \*

(H) For any person to do any of the following:

\* \* \*

(4) Discriminate against any person in the terms or conditions of selling, transferring, assigning, renting, leasing, or subleasing any housing accommodations or in furnishing facilities, services, or privileges in connection with the ownership, occupancy, or use of any housing accommodations, including the sale of fire, extended coverage, or homeowners insurance, because of race, color, religion, sex, familial status, ancestry, disability, or national origin or because of the racial composition of the neighborhood in which the housing accommodations are located.

R.C. 4112.02(H)(4). Furthermore, R.C. 4112.08 provides that fair-housing protections in Ohio are to be construed and interpreted liberally.

{¶ 15} Although the issue of a hostile-living-environment claim is a matter of first impression in Ohio, federal courts have recognized such a cause of action based upon various types of harassment. See *DiCenso v. Cisneros* (C.A.7, 1996), 96 F.3d 1004, 1008 (hostile living environment based upon gender); *Honce v. Vigil* (C.A.10, 1993), 1 F.3d 1085, 1088 (hostile living environment based upon gender); *Smith v. Mission Assoc. Ltd. Partnership* (D.Kan.2002), 225 F.Supp.2d 1293 (hostile living environment based upon racial harassment); *Neudecker v. Boisclair Corp.* (C.A.8, 2003), 351 F.3d 361, 364 (hostile living environment based upon disability); *Halprin v. Prairie Single Family Homes of Dearborn Park Assn.* (C.A.7, 2004), 388 F.3d 327, 330 (hostile living environment based upon

religion); *Bradley v. Carydale Ents.* (E.D.Va.1989), 707 F.Supp. 217, 223 (racial harassment in housing).

{¶ 16} Appellants argue and this court agrees that tenant-versus-tenant harassment is analogous to co-worker harassment in the workplace. In *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 729 N.E.2d 726, the Supreme Court of Ohio set forth the requirements for establishing a claim of hostile environment in the workplace due to sexual harassment:

> In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

Id., paragraph two of syllabus, quoting R.C. 4112.02(A). While noting that most courts also require the plaintiff to show that he or she belongs to a protected class, the court in *Hampel* found such a showing unnecessary due to the fact that there are only two sexes and both of them are entitled to protection under R.C. 4112.02(A). Id. at 177, fn. 2.

{¶ 17} In addressing the issue of a hostile living environment, the court in *Smith* stated:

> The elements necessary for a prima facie case of hostile housing environment are 1) plaintiffs are members of a protected class, 2) the conduct was unwelcome, 3) the conduct was based on the race of plaintiffs, 4) it was sufficiently severe or pervasive to alter the plaintiffs' living conditions and create an abusive environment and 5) defendant knew or should have known about the harassment.

225 F.Supp.2d 1293 at 1298–1299, citing *Reeves v. Carrollsburg Condominium Unit Owners Assn.* (D.D.C. Dec. 18, 1997), No. CIV.A. 96–2495RMU, 1997 WL 1877201.

{¶ 18} After reviewing the record, federal case law, and Ohio case law regarding discrimination in the workplace, this court finds that the trial court erred in not recognizing a cause of action for a hostile living environment in this case. This is not a case of harassment of one neighbor by another, in which each neighbor owns his or her own property. The property at issue in this case is a public housing development owned and operated by AMHA. AMHA has control over who is allowed to be a tenant in its facilities and has the authority to evict anyone who does not comply with the terms of the lease he has entered into with AMHA. In this case, the lease provided:

## VII. TENANT OBLIGATIONS

The TENANT agrees:

\* \* \*

R. To conduct himself/herself and cause other persons who are on the premises with the TENANT'S consent to conduct themselves in a manner which will not disturb the neighbors' peaceful enjoyment of their accommodations; or to engage in illegal or other activity which impairs the physical or social environment of the development.

{¶ 19} Based upon the Supreme Court of Ohio's decision in *Hampel*, 89 Ohio St.3d 169, 729 N.E.2d 726, this court finds that the elements necessary to establish a prima facie case of hostile living environment under the facts in this case are that (1) plaintiffs are members of a protected class, (2) the harassment was unwelcome, (3) the harassment was based on the plaintiffs' race, (4) the harassment was sufficiently severe or pervasive to alter the plaintiffs' living conditions and create an abusive environment, and (5) either (a) the harassment was committed by a landlord or (b) the landlord, through its agents or supervisory personnel, knew or should have known about the harassment and failed to take immediate and appropriate corrective action.

{¶ 20} After finding that Ohio does not recognize a cause of action for a hostile living environment under Ohio's Fair Housing Act, the trial court concluded that even if the action were recognized in Ohio, Harper did not present evidence sufficient to establish that the alleged harassment was sufficiently severe or pervasive as to alter her living environment or to establish that AMHA had sufficient notice of the alleged harassment. This court disagrees.

{¶ 21} Initially, this court notes that the trial court improperly weighed the credibility of Harper's allegations and enforced its own factual conclusion regarding the evidence. This is not permissible on summary judgment. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202. The trial court characterized the situation between the Harpers and the Kaisks as "an unfortunate ongoing skirmish between neighbors that may have been tinged with discriminatory overtones or occasional discriminatory comments." Viewing the facts in the light most favorable to the nonmoving party, however, this court finds that Harper presented evidence of the existence of a genuine issue of material fact that the elements of a hostile living environment existed in this case. Harper alleged that the Kaisk family would swear at members of her family and visitors to her home, using racial epithets. Harper maintained that the name-calling, swearing, and shouting escalated to overt threats of violence towards her family. Harper stated that the harassment was continuous from September 2001 through January 2003. Harper further alleged

that she filed numerous racial-harassment complaints both verbally and in writing with the management of Van Buren Homes, but that her complaints were neither investigated nor resolved.[2]

{¶ 22} Appellants Harper and FHAA's second assignment of error is sustained.

### OCRC's First Assignment of Error

The trial court improperly required plaintiffs to demonstrate violent or extreme conduct in order to establish a hostile living environment claim.

### OCRC's Second Assignment of Error

The trial court improperly determined that there was no genuine issue of material fact as to whether the Harper family was subjected to severe or pervasive harassment based on their race.

### OCRC's Third Assignment of Error

The trial court improperly determined that there was no genuine issue of material fact as to whether the landlord was put on notice of the racially hostile environment.

### Harper and FHAA's First Assignment of Error

The trial court erred when it held that even if Ohio adopted the doctrine of hostile environment in housing, insufficient facts showed a hostile environment here.

### Harper and FHAA's Third Assignment of Error

The trial court erred when it articulated facts that showed notice of the harassment and an escalating pattern of harassment yet concluded no notice and not severe or pervasive misconduct.

■ {¶ 23} OCRC's first, second, and third assignments of error are rendered moot by this court's resolution of Harper and FHAA's second assignment of error. Harper and FHAA's first and third assignments of error are rendered moot as well. Therefore, we decline to address appellants' remaining assignments of error. See App.R. 12(A)(1)(c).

---

2. While June Davidson stated in her deposition testimony that she had been aware of an ongoing controversy between the Kaisk family and the Harper family for over a year, she concluded that the controversy was not racially based. Ms. Davidson based her conclusion upon a belief that harassment based upon race no longer exists in today's society.

### III

{¶ 24} In sum, this court finds that a cause of action based upon a hostile living environment is actionable in Ohio and that Harper established an issue of material fact that the elements of that action were present in this matter. Having found that the trial court improperly awarded summary judgment in favor of AMHA, we reverse the judgment of the Summit County Court of Common Pleas and remand the cause to the trial court for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

MOORE, J., concurs.

SLABY, P.J., dissents.

SLABY, Presiding Judge, dissenting.

{¶ 25} I respectfully dissent.

{¶ 26} I would not recognize a cause of action for hostile housing environment. The majority's decision opens the door to judicially legislate against "bad neighbors" within the context of public housing. I believe that it is then inevitable that feuding tenants in private housing would seek similar remedies. In fact, other remedies such as nuisance actions, police intervention, and defamation actions are already available to address such situations.

{¶ 27} I further disagree with the analogy between a cause of action for hostile working environment and a cause of action for hostile housing environment. Private employers exercise immediate control over their employees, so it is reasonable to hold them accountable for the known and tolerated hostile acts of their employees in the workplace. I believe that it is unreasonable to hold lessors in housing situations to the same level of accountability, given the impracticability of the exercise of such control over renters and the burden of policing "bad neighbors." This is especially unreasonable given that such a claim is viable only for renters against other renters of the same housing authority or landlord and not for private homeowners. "Bad neighbors" are not exclusive to a rental-housing environment. Given the existence of other remedial measures to address neighbors who perpetuate an intolerable or dangerous living environment, I find no reason to expand the law and create a cause of action to subject lessors to greater liability. I would affirm the trial court's finding that no such cause of action for hostile living environment exists in Ohio.