## DARNELL v. COLUMBUS SHOW-CASE COMPANY.

1. A lease of a tenement carries with it an implied grant of the right to light and air from adjoining land of the landlord, where the situation and habitual use of the demised tenement is such that the right to light and air is essential to the beneficial enjoyment of the leased tenement.

2. One who subsequently rents the adjoining land is invested with no greater privileges than his landlord, and is liable to his neighbor tenant in damages resulting from interference with the latter's implied easement.

3. Ordinarily the damage recoverable is the depreciated rental value of the tenement; but if the instrumentality which obstructs the light and air be so constructed as to project the rain-water through the window of the tenement to the injury of the tenant's bedroom furnishings and to his personal discomfort, and this is done with the view of causing the tenant to abandon his lease, punitive damages may be allowed.

4. Some of the special demurrers were well taken, and others should have been overruled.

Submitted May 23,—Decided August 10, 1907.

Action for damages. Before Judge Little. Muscogee superior court. July 16, 1906.

*G. Y. Tigner,* for plaintiff. *C. E. Battle* for defendant.

EVANS, J. The case made by the petition was substantially this: The owner of two adjoining lots leased them separately to the plaintiff and the defendant, the lease to the plaintiff being prior to that of the defendant. Upon the lot demised to the plaintiff was a three-room tenement, which was used as a dwelling-house. The only means of lighting and ventilating two rooms thereof was by a single window in each room, which overlooked the premises demised to the defendant. The defendant, being a manufacturing corporation dealing in lumber, piled a quantity of lumber on the lot rented by it in such a manner as to obstruct the light and air necessary for the use and enjoyment of the tenement by the other tenant, and to cause rain-water to drip into the house, rendering the house damp, unwholesome, unhealthy, and uncomfortable. Other matters were also alleged, which will be noticed in a discussion of the special demurrers filed. The defendant demurred both generally and specially to the petition; the demurrers were sustained, and the petition was dismissed.

The complaining tenant was a tenant by the year, and does not claim an express grant to any easement of light and air. Whatever right he may have to prevent his neighbor tenant from obstructing his window must be founded upon an implied grant of an easement in the use and enjoyment of light and ventilation over the adjoining land of his landlord at the time of his lease. There is much conflict in the American cases on the question of implied grant of these easements. In many jurisdictions it is held that

a lease of land upon which is a building depending for its light and air on windows therein, which overlook adjoining land of the landlord, does not include any right of light and air through such windows, unless expressly granted in the lease. Myers *v.* Gemmell, 10 Barb. 537; Keifer *v.* Klein, 51 Ind. 316; Keating *v.* Springer, 146 Ill. 481, 22 L. R. A. 544, 37 Am. St. R. 175, 34 N. E. 805. Other courts lay down the doctrine that in a lease there is an implied grant of the right to light and air from the adjoining land of the landlord, where the situation and habitual use of the demised premises is such that the right to light and air is necessary to the beneficial enjoyment of the leased premises. Case *v.* Minat, 158 Mass. 577, 33 N. E. 700. See note to this case in 22 L. R. A. 536, where many of the cases are collated. The question of an implied grant of easement of light and air was before this court in *Turner* v. *Thompson, 58 Ga. 268.* In that case it was held, that "Where an executrix sold half a lot of land, with a tenement thereon having windows opening upon the other half lot, and bought the other half herself at the same sale, she will be estopped from obstructing the passage of light and air through such windows, if those windows were necessary to the admission of sufficient light and air for the reasonable enjoyment of the tenement which she sold; aliter, if sufficient light and air can be derived from other windows opened, or which could conveiently be opened, elsewhere in the tenement to make the rooms reasonably useful and enjoyable." The principle deduced from this decision has been incorporated in the Civil Code, § 3046, as follows: "A right to the easement of light and air over another's land through ancient lights or windows is not acquired by prescription; but where one sells a house, the light necessary for the reasonable enjoyment whereof is derived from and across adjoining land then belonging to the same owner, the easement of light and air over such vacant lot passes as an incident to the house sold, because necessary to the enjoyment thereof." The principle here stated is equally applicable to a case where the owner of two adjoining lots leases one upon which there is a dwelling-house dependable upon a window overlooking the adjoining lot for light and air. Indeed the reason for the rule is more cogent in a case of tenancy than of purchase. Where one purchases a tenement depending for light and air upon a window overlooking the adjoin-

ing land belonging to his grantor, in order to prevent closing the window, he must show that he can not get light and air elsewhere over his own land; that it is a real necessity that he get it at this easement; that he can not substitute other lights to his own building over his own property at a reasonable cost. *Thompson* v. *Turner*, 69 *Ga.* 223. A tenant, without his landlord's consent, can not change and alter the demised tenement in any material respect. Certainly he is under no duty to alter the demised tenement to meet an exigency produced by the act of his landlord, to escape its consequences. The tenant is entitled to the use of the tenement with such necessary privileges accruing from its situation to adjoining land of his landlord at the time of the demise, and the landlord can not deprive him of the enjoyment thereof by changing the situation in such a material way as practically to make the tenement unfit for use.

We have thus far discussed the matter as if the complaint of the tenant were against his landlord, instead of against a tenant who subsequently rented from his landlord. It is not charged in the petition that the common landlord consented, expressly or impliedly, to the commission of the acts complained of, or connived thereat. From the doctrine that a landlord is not responsible for the acts of strangers, it would follow that a tortious act done by one tenant to another tenant of a common landlord, without the authority, consent, or connivance of the landlord, is not the latter's tort, but the tort of him who does the act. *Perry* v. *Wall*, 68 *Ga.* 70. However, if the common landlord can not use his adjoining land in such a manner as to shut out necessary light and air from a dwelling-house which he has rented, one who thereafter rents the adjoining land has no greater right or privilege in respect thereto than his landlord possessed. It follows, therefore, that the defendant can not justify its act under the lease.

The petition should not have been dismissed on general demurrer, for another reason. It was alleged that the lumber was piled in such a way as to cause the rain-water to be thrown through the window of the plaintiff's bedroom, "thereby wetting petitioner's bedroom floor and his bedding and bedroom furnishings, and rendering petitioner's said house, and bedroom especially, damp, close, stuffy, unwholesome and unhealthy, and exceedingly uncomfortable, to his great annoyance, and to the disturbance and

violation of his right to the full, free, comfortable, and reasonable enjoyment of his said dwelling-house and home." Here is charged a distinct physical invasion and interference with the plaintiff's possession, which is a positive tort. Although a tenant has no estate in the land, he is the owner of its use for the term of his rent contract, and can recover damages for any injury to such use resulting from a physical invasion of his possession. See *Bentley* v. *Atlanta,* 92 *Ga.* 623, 18 S. E. 1013.

There were several special demurrers to the petition. One was directed to the allegations respecting the plaintiff's condition in life, and the nature of his vocation. Simply that the plaintiff is a poor man, and his employment is that of a night watchman, which requires him to sleep in the day, would not make the defendant liable in damages for the interference with his slumbers caused by the noises incident to the operation of a lumber yard. Hence the 16th and 20th paragraphs were subject to the special demurrers aimed at them. The allegations that the plaintiff had previously occupied the same house as a tenant for many years in the past, and was attached to the same, was entirely irrelevant, and properly stricken on demurrer. The allegation in the 17th paragraph, that the plaintiff had renewed his lease for another term, does not aid his case. When he renewed the lease he took the premises as he found them, and can not complain of conditions existing at the time of the renewal of his lease contract. The 22nd paragraph of the petition declared that the various acts and deeds set forth and complained of, both in themselves and in the intent with which they were done, constituted aggravating circumstances entitling petitioner to additional damages for which he sues. The mere wrongful obstruction of the plaintiff's light, without more, would not make the defendant liable in punitive damages. But if, as charged in the petition, the lumber was piled so as not only to exclude light and air from the plaintiff's dwelling, but also to throw the rain-water into his bedroom, and this was done by the defendant for the purpose of harassing the plaintiff with a view of causing him to abandon his lease, that the defendant might get possession of the property, it would be in the province of the jury to allow punitive damages. The other special demurrers to which no special reference has been made should have been overruled.

*Judgment reversed.   All the Justices concur.*