# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1799

_____

| | | |
|---|---|---|
| Michael Neudecker, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Boisclair Corporation, | * | District of Minnesota. |
| | * | |
| Appellee. | * | [PUBLISHED] |

_____

Submitted: October 2, 2003
Filed: December 8, 2003

_____

Before BYE, BOWMAN, and MELLOY, Circuit Judges.

_____

PER CURIAM.

Michael Neudecker appeals from the district court's dismissal of his civil complaint against Boisclair Corporation. We reverse and remand.

In October 2002 Neudecker filed his pro se complaint for damages, alleging Boisclair violated his rights under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Rehabilitation Act); the Privacy Act of 1974, 5 U.S.C. § 552a (Privacy Act); the Fair Housing Act, 42 U.S.C. §§ 3601-3619 (FHA); and the Minnesota Government Data Practices Act, Minn. Stat. §§ 13.01-13.99 (2003) (MGDPA).

Neudecker later sought leave to recast his Privacy Act and MGDPA claims as a common law invasion-of-privacy claim.

Neudecker alleged the following facts in his complaint and in response to the motion to dismiss. See Anthony v. Runyon, 76 F.3d 210, 214 (8th Cir. 1996) (district court must consider allegations made in response to motion to dismiss). In April 1979 Boisclair property manager Marcia Thompson coerced unidentified medical information from Neudecker's father as a condition of Neudecker's tenancy at Penn Place Apartments (Penn Place). Boisclair owns Penn Place and is a recipient of federal funding. Thompson released this medical information to "third party subordinate employees who released it to other tenants in the building, who released the information to later incoming tenants." This "practice and procedure" of disseminating Neudecker's private information continued for the entire twenty-three years Neudecker lived at Penn Place.

In December 1996, the son of Boisclair building manager "Anderson" and the daughter of Boisclair assistant building manager Fran Lubecke both targeted Neudecker, who suffers from obsessive-compulsive disorder (OCD), for disability-based harassment (hereinafter "disability harassment"). When Neudecker complained to Boisclair management about the harassment, Anderson and Lubecke sent letters to Boisclair property manager Sally Ruffenach "containing false counter-accusations . . . as reprisal." In January 1998 Neudecker received an anonymous threatening letter signed, "The Demon that will haunt you," and in April 1998 Anderson's son pinned Neudecker against a wall after Neudecker had made another complaint. In October 1998 Ruffenach falsely accused Neudecker of "stalking" another tenant and threatened to evict him, and sometime in late 1998 she threatened to evict Neudecker "as reprisal" for his continued complaints about being harassed.

In December 1998 Neudecker filed an administrative claim, which was denied in August 1999 after the HUD investigator concluded "that the harassment was an

aspect of [Neudecker's] mental disorder." Neudecker sought reconsideration, which HUD denied in December 2000. The harassment and retaliation continued throughout Neudecker's tenancy at Penn Place and exacerbated his mental health problems, resulting "in alcohol and food abuse that caused damage to [his] liver, pancreas and other body systems." In April 2002 Neudecker surrendered his apartment.

The two statutes at issue in this appeal are the FHA and the Rehabilitation Act. The FHA prohibits discrimination, based on handicap, against any person with respect to the rental of a dwelling or the provision of related services or facilities. See 42 U.S.C. § 3604(f)(2). The Rehabilitation Act prohibits discrimination "under any program or activity receiving [F]ederal financial assistance" against any otherwise qualified individual with a disability, solely because of his disability. See 29 U.S.C. § 794(a). Both statutes provide for private causes of action. See Rodgers v. Magnet Cove Pub. Schs., 34 F.3d 642, 643-45 (8th Cir. 1994) (Rehabilitation Act provides for damages claim for disability discrimination); Robinson v. Gorman, 145 F. Supp. 2d 201, 205 (D. Conn. 2001) (disability discrimination in federally subsidized housing program is actionable under Americans with Disabilities Act (ADA), FHA, and Rehabilitation Act).

Although the district court did not address Boisclair's argument that the complaint was time-barred, we find that neither of the applicable statutes of limitations had expired when Neudecker filed his October 2002 complaint: the alleged harassment and retaliation continued throughout the pendency of his HUD administrative claim and until he moved from his apartment in April 2002. See 42 U.S.C. § 3613(a)(1)(A)-(B) (2-year limitations period applicable to FHA claims is tolled while administrative claim is pending); Havens Realty Corp. v. Coleman, 455 U.S. 363, 380-81 (1982) (FHA complaint is timely where unlawful practice continues into limitations period); Gaona v. Town & Country Credit, 324 F.3d 1050, 1055-56

(8th Cir. 2003) (Minnesota's 6-year limitations period for personal-injury claims applies to Rehabilitation Act and ADA claims).

As to the merits of the claims, we conclude that Neudecker sufficiently alleged a retaliation claim under the FHA and the Rehabilitation Act, because he asserted that a Boisclair representative threatened to evict him as reprisal for his complaints that tenants were engaging in disability harassment. See 42 U.S.C. § 3617 (it is unlawful to coerce, intimidate, threaten, or interfere with any person in exercise or enjoyment of any right granted or protected under §§ 3603-3606 of FHA); Sherman v. Runyon, 235 F.3d 406, 409-10 (8th Cir. 2000) (to be engaged in protected activity under Rehabilitation Act, person must have been protesting what he perceived as discriminatory acts); Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999) (elements of ADA retaliation claim include (1) plaintiff engaged in statutorily protected activity; (2) defendant took adverse action against plaintiff; and (3) causal connection exists between adverse action and protected activity); Allison v. Dep't of Corr., 94 F.3d 494, 497 (8th Cir. 1996) (cases interpreting ADA and Rehabilitation Act are effectively interchangeable). Although the retaliatory conduct in this case involved only threats of eviction, which were never carried out, we find Neudecker sufficiently alleged an adverse action, at least at this early pleading stage. Cf. Harris v. Itzhaki, 183 F.3d 1043, 1050-52 (9th Cir. 1999) (holding in summary judgment case that tenant established prima facie FHA claim where she presented evidence that she suffered emotional distress and feared eviction due to notices she received in alleged retaliation for complaining about racially insensitive remarks; tenant's damages claim was not barred simply because she moved from her apartment and was not evicted).

We next consider whether Neudecker has an independent claim for disability harassment under the FHA and the Rehabilitation Act. Although we find no case authority expressly authorizing such a claim in the housing context, decisions in related areas provide the foundation for this type of claim. Several federal courts

have found disability harassment in the workplace to be actionable under the Rehabilitation Act and the ADA. See Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001) (hostile-work-environment claims for disability harassment are cognizable under ADA); Flowers v. S. Reg'l Physician Servs., Inc., 247 F.3d 229, 233 (5th Cir. 2001) (same); Hiller v. Runyon, 95 F. Supp. 2d 1016, 1022-23 (S.D. Iowa 2000) (same under Rehabilitation Act). Although this case presents disability harassment in housing--not the workplace--some federal courts have permitted claims under the FHA when sexual harassment causes a hostile housing environment. See DiCenso v. Cisneros, 96 F.3d 1004, 1008 (7th Cir. 1996) (recognizing hostile-housing-environment claim for sexual harassment under FHA); Honce v. Vigil, 1 F.3d 1085, 1088-90 (10th Cir. 1993) (hostile-housing-environment claims for sexual harassment are actionable under FHA where harassment unreasonably interferes with plaintiff's use and enjoyment of premises; harassment must be "sufficiently severe or pervasive" to alter conditions of housing arrangement); Williams v. Poretsky Mgmt., Inc., 955 F. Supp. 490, 495-96 (D. Md. 1996) (collecting cases and concluding hostile-housing-environment claims for sexual harassment are actionable under FHA).

Based on the foregoing, we conclude that disability harassment in the housing context is actionable under the FHA and the Rehabilitation Act, and that Neudecker's allegations state such a claim. He alleged below that he suffers from OCD, that Boisclair, a recipient of federal funding, subjected him to unwelcome harassment based on his OCD, and that this unwelcome harassment was sufficiently severe to deprive him of his right to enjoy his home, as evidenced by his physical problems and ultimate decision to move out. Cf. Amir, 184 F.3d at 1027 (OCD found to be disability under ADA); EEOC v. J. H. Routh Packing Co., 246 F.3d 850, 854 (6th Cir. 2001) (complaint need only advise defendant of claimed disability; plaintiff need not identify in initial pleading substantially limited major life activity); EEOC v. Northwest Airlines, Inc., 216 F. Supp. 2d 935, 939 (D. Minn. 2002) (noting four circuit courts have ruled that ADA plaintiff is not required to assert substantially

limited major life activity at pleading stage); Hiller, 95 F. Supp. 2d at 1023 (elements of hostile-work-environment claim for disability harassment include (1) plaintiff is qualified individual with disability; (2) plaintiff was subject to unwelcome harassment; (3) harassment was based on his disability or request for accommodation; and (4) harassment was sufficiently severe or pervasive to alter conditions of employment and to create abusive working environment).

While Neudecker does not allege that Boisclair's agents themselves harassed him, he does allege that tenants--including children of Boisclair's management team--constantly harassed and threatened him based on his disability; that he repeatedly complained to Boisclair management about the harassment to no avail; and that he ultimately moved from his apartment out of concerns for his health stemming from the harassment. Cf. Crist v. Focus Homes, Inc., 122 F.3d 1107, 1111-12 (8th Cir. 1997) (residential home for individuals with developmental disabilities could be liable for resident's sexual harassment of caretakers where caretakers reported harassment to residential home and residential home failed to respond adequately); Henson v. City of Dundee, 682 F.2d 897, 910 (11th Cir. 1982) (workplace can be rendered offensive in equal degree by acts of supervisors, coworkers, and strangers).

Finally, we note the district court did not address Neudecker's request to recast his Privacy Act and MGDPA claims as a common-law privacy claim under Minnesota state law. On remand Neudecker should be granted this opportunity. See Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 236 (Minn. 1998) (recognizing common-law privacy claims for intrusion upon seclusion, and for appropriation and publication of private facts).

Accordingly, we reverse and remand for further proceedings consistent with this opinion.

_____