HUGHES, Appellee,

v.

MILLER, Appellant.

[Cite as *Hughes v. Miller*, 181 Ohio App.3d 440, 2009-Ohio-963.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91482.

Decided March 5, 2009.

Donald Gallick, for appellant.

Gerald D. Piszczek, Co., L.P.A., and Eric D. Hall, for appellee.

———————

MARY EILEEN KILBANE, Presiding Judge.

{¶ 1} This is an appeal from the decision of the Cuyahoga County Common Pleas Court sua sponte dismissing the remaining claim in a civil action, a counterclaim that the appellant, Annette Miller, contends sufficiently stated a claim for retaliation against her participation in a protected activity in violation of R.C. 4112.02(I). By sua sponte dismissing Miller's counterclaim for failure to state a claim, the trial court impliedly determined that the action of appellee, Ralph Hughes, in filing a subsequently dismissed complaint for defamation against her in the instant case, did not constitute retaliatory action under R.C. 4112.02(I). The trial court found that a dismissal of the remaining counterclaim was warranted. For the following reasons, we disagree with the trial court and reverse and remand.

{¶ 2} On August 7, 2006, Hughes filed a pro se complaint in this case, accusing Miller of defamation. His complaint alleged that Cuyahoga County Community College ("TRI–C") employed both Hughes and Miller as certified police officers and that both officers were assigned the same shift. According to the complaint, Miller filed a formal, internal complaint with TRI–C on August 5, 2005, which stated that, while at work at TRI–C, Hughes had committed various acts of sexual harassment against her and two other female TRI–C employees. The complaint also alleged that TRI–C conducted an extensive investigation that commenced on August 8, 2005, and concluded on September 14, 2005. Hughes alleged that Miller's action in filing the internal complaint, which according to Hughes falsely accused him of on-duty intoxication and sexual harassment, was done with malice, was defamatory per se, and resulted in injury to his reputation and profession.

{¶ 3} On September 27, 2006, Miller, through her first retained counsel, simultaneously filed a compulsory counterclaim with jury demand setting forth an alleged violation of R.C. 4112.02(I) and a motion to dismiss Hughes's complaint for failure to state a claim.

{¶ 4} Miller alleged in her counterclaim that Hughes filed the complaint for defamation against her in retaliation for her action of filing the internal complaint against him. Miller's motion to dismiss Hughes's complaint for defamation under Civ.R. 12(B)(6) argued that the complaint was filed one year and three days after the alleged defamatory conduct occurred, and additionally, that Miller had an absolute privilege to make the statements that Hughes complained to be defamatory.

{¶ 5} Hughes retained counsel and filed a reply to Miller's counterclaim on October 27, 2006, with leave of court having been granted.

{¶ 6} On November 20, 2006, the following entry of the court was filed.

Defendant's motion # 1980643, filed 9–27–06, motion to dismiss and compulsory counterclaim, is hereby granted as Plaintiff has failed to state a claim for which relief can be granted in that Plaintiff's claims for libel and slander are time-barred. Final. Costs to Plaintiff.

{¶ 7} Hughes did not appeal the dismissal of his complaint.

{¶ 8} On February 1, 2007, Miller filed a motion for relief from judgment pursuant to Civ.R. 60(A) and (B), seeking relief from the portion of the court's November 20, 2006 entry inadvertently dismissing her compulsory counterclaim.

{¶ 9} On March 12, 2007, the following entry of the court was filed, which reads:

Defendant's motion [# 2060721] filed 2–1–07, Motion for Relief from Judgment, is hereby granted. Defendant Miller's Counterclaim against Plaintiff Ralph Hughes is reinstated to this Court's active docket.

{¶ 10} Original counsel for both Hughes and Miller subsequently withdrew from the case. Miller retained new counsel, who filed a notice of appearance on April 23, 2007. Hughes returned to his original status as a pro se plaintiff on July 19, 2007.

{¶ 11} The trial court ruled on numerous motions filed by both parties the last six months of 2007, which are not relevant to the instant appeal, and also scheduled the matter for final pretrial on November 27, 2007, and jury trial on December 10, 2007. Hughes had also demanded a jury trial on Miller's counterclaim.

{¶ 12} The jury trial on Miller's counterclaim did not go forward on December 10, 2007, as the following entry of the court was issued and filed on December 11, 2007:

[Date 12/10/07] Pursuant to Civil Rule 12(B)(6), this Court hereby gives notice of its intent to dismiss, sua sponte, counterclaim Plaintiff Annette Miller's claim for failure to state a claim upon which relief be granted. Any brief in opposition to this order shall be filed on or before 1–14–08. Any reply is due on or before 2–4–08.

{¶ 13} Miller, through counsel, filed a response with brief in opposition to the trial court's sua sponte notice of intent to dismiss on January 7, 2008. Hughes filed his pro se response with brief in support of the trial court's sua sponte notice of intent to dismiss Miller's counterclaim on February 1, 2008.

{¶ 14} The trial court dismissed Miller's counterclaim by the following entry filed on May 13, 2008.

[Date 5/5/08] Pursuant to Civil Rule 12(B)(6), and this Court's order dated 12–10–07, this Court hereby dismisses, sua sponte, Counterclaim Plaintiff's claims for failure to state a claim upon which relief can be granted. Final. Costs to each party.

{¶ 15} Miller timely appealed the trial court's decision to sua sponte dismiss her counterclaim for failure to state a claim and presents the following sole assignment of error for review.

Assignment of Error I

The trial court erred when it sua sponte dismissed appellant's counterclaim for failure to state a claim upon which relief could be granted.

STANDARD OF REVIEW

{¶ 16} "[A] court may dismiss a complaint on its own motion pursuant to Civ.R. 12(B)(6), failure to state a claim upon which relief can be granted, only after the parties are given notice of the court's intention to dismiss and an opportunity to respond." *Columbus Metro. Hous. Auth. v. Flowers*, Franklin App. Nos. 05AP–87 and 05AP–372, 2005-Ohio-6615, 2005 WL 3415838, quoting *State ex rel. Fogle v. Steiner* (1995), 74 Ohio St.3d 158, 161, 656 N.E.2d 1288.

{¶ 17} As recently stated by this court in *NorthPoint Properties v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, at ¶ 11:

Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. *Greeley v. Miami Valley Maintenance Contrs. Inc.* (1990), 49 Ohio St.3d 228 [551 N.E.2d 981] * * *. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* [1992], 65 Ohio St.3d 545 [, 605 N.E.2d 378] * * *. Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584.

{¶ 18} Accepting the factual allegations in Miller's counterclaim as true, we must determine a question of law—whether the trial court's sua sponte Civ.R. 12(B)(6) dismissal was appropriate. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, at ¶ 5. The issue is whether, under the concept of notice pleading contemplated in Civ.R. 8(A), Miller's counterclaim sufficiently sets forth a claim for retaliation for participation in a protected activity in violation of R.C. 4112.02(I). See *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781.

ALLEGATIONS OF THE COUNTERCLAIM

{¶ 19} Miller generally alleged in her counterclaim that the facts set forth in support of her counterclaim against Hughes arose out of the same set of operative facts as Hughes's complaint.

{¶ 20} Specific factual allegations set forth in Miller's counterclaim are as follows:

> Both Hughes and Miller are now, and were at all times relevant to the allegations made herein, *employees of Cuyahoga Community College (TRI–C) in Cuyahoga County.* * * *. Miller, pursuant to the employment policies of TRI–C, engaged in protected activity by filing an internal complaint of sexual harassment with the Human Resources Department of TRI–C on August 5, 2005. * * * On August 5, 2005, Defendant Miller filed a *formal complaint with her employer, TRI–C,* accusing Hughes of sexually harassing her and others. * * * TRI–C investigated the complaint and issued a report supporting Miller's allegations. * * * TRI–C determined that Miller's allegations were founded and disciplined Hughes. * * * On August 8 [sic], 2006, Hughes filed a Complaint with the Court of Common Pleas, Cuyahoga County, Case No. 06598129, alleging that Miller's August 5, 2005 *internal complaint* was defamation *per se.* * * * In his Complaint, Hughes demanded declaratory relief and monetary damages. * * * In order to defend against this claim, Miller has retained counsel and is now required to defend her absolute right to complain of sexual harassment in the workplace.

(Emphasis added.)

{¶ 21} The stated cause of action set forth in Miller's counterclaim for retaliation for participation in protected activity, in violation of R.C. 4112.02(I), is as follows:

> On August 5, 2005, *pursuant to TRI–C's sexual harassment policy and procedure, Miller filed an internal complaint alleging that Hughes had subjected her and others to unwanted sexual harassment.* * * * The act of filing an internal complaint is protected activity as defined by R.C. 4112.02(I). * * * TRI–C began its investigation into Miller's complaint on August 11, 2005. * * * Ralph Hughes had knowledge of the complaint against him on or before August 23, 2005 when he was interviewed and allowed to respond to Millers' allegations. * * * On September 27, 2005, Andre Burton of TRI–C informed Hughes that, as a result of the investigation, he had determined that it was probable that he had subjected Miller to sexually harassing behavior. In addition, Burton, informed Hughes that he was recommending corrective action. * * * In the correspondence noted above, Burton warned Hughes that TRI–C's policy prohibited Hughes from retaliating or taking adverse action against Miller. * * * TRI–C disciplined Hughes for sexually harassing Miller.

\* \* \* On August 8[sic], 2006, Hughes filed the herein referenced Complaint against Miller alleging that her sexual harassment complaint of August 5, 2005 was defamatory. \* \* \* Hughes' Complaint was filed as a direct result of Miller's complaint to TRI–C with the purpose and effect of retaliating against Miller for engaging in protected activity. \* \* \* Hughes' Complaint is retaliation per se and, therefore, a violation of R.C. 4112.02(I), which prohibits a person from retaliating against a person who has engaged in protected activity. \* \* \* Hughes, in his Prayer for Relief, demands a declaratory judgment that Millers' [sic] allegations were defamatory and monetary relief in an effort to punish and harass Miller for engaging in protected activity under R.C. 4112.02(I). \* \* \* Hughes' Complaint evidences a conscious disregard for Miller's right and obligation to complain of sexual harassment, such disregard having a great possibility of causing substantial damages and a chilling effect on the right to complain of sexual harassment in the workplace, thereby subjecting Hughes to liability to punitive damages. \* \* \* As a result of Hughes's illegal retaliation, Miller has incurred legal expenses and otherwise suffered by being subjected to the continued harassment and retaliation caused by defending this lawsuit. \* \* \* As a direct and proximate result of Hughes' action in filing a Complaint for defamation, Miller has suffered damages and is entitled to judgment as a matter of law pursuant to R.C. 4112.99.

(Emphasis added.)

{¶ 22} In her prayer for relief in her counterclaim, Miller sought attorney fees, costs, and interest on her claim for alleged violation of R.C. 4112.02(I) and arising out of her defense of the alleged retaliatory complaint. She also sought compensatory and punitive damages for the alleged illegal retaliatory conduct.

ANALYSIS

{¶ 23} Miller's counterclaim purports to set forth a cause for retaliatory conduct under R.C. 4112.02(I). R.C. 4112.02 states:

It shall be an unlawful discriminatory practice:
\* \* \*

(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code.

{¶ 24} Miller's counterclaim does not include a claim for retaliation for participation in protected activity under the federal counterpart to R.C. 4112.02(I), Section 2000e–3(a), Title 42, U.S.Code. As noted in *Carlisle v. Bennett Ent.* (N.D.Ohio 1997), No. 3:96 CV 7447, 1997 U.S. Dist. LEXIS 18752:

Ohio law makes it unlawful "for any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice * * * or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under [the Ohio Civil Rights Act]." Ohio Rev.Code § 4112.02(I). Ohio's anti-retaliation law has a broader scope than Title VII because it does not limit its coverage to people in an employer-employee situation, *LeMasters v. Christ Hosp.* (S.D.Ohio 1991), 777 F.Supp. 1378, 1381–82, but the standard for proving retaliatory discrimination in the employment context is the same under Ohio law as it is under Title VII. *Rudy v. Loral Defense Sys.* (1993), 85 Ohio App.3d 148, 155, 619 N.E.2d 449, 454.

{¶ 25} This principle is reiterated in a recent decision of the Ohio Supreme Court cited by appellant: *Greer–Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, at ¶ 13:

Turning to the anti-retaliatory provision of R.C. 4112.02(I), it is "an unlawful discriminatory practice * * * [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." To establish a case of retaliation, a claimant must prove that (1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action. *Canitia v. Yellow Freight Sys., Inc.* (C.A.6, 1990), 903 F.2d 1064, 1066.

{¶ 26} The Ohio Supreme Court reiterated other principles stated in *Carlisle*. In *Greer–Burger*, at ¶ 12, the court quoted *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128, when stating " 'federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.' " Furthermore, it was also noted in *Greer–Burger* at ¶ 13, fn. 2, that "R.C. 4112.02 uses the term 'person' which has a broader definition than 'employee.' " See also *Carlisle*, citing *LeMasters*.

{¶ 27} In *Greer–Burger*, the Ohio Supreme Court briefly discussed the impact of the United States Supreme Court decision in *Burlington N. & Santa Fe Ry. Co. v. White* (2006), 548 U.S. 53, 126 S.Ct. 2405, 2412–2415, 165 L.Ed.2d 345, on antiretaliation claims brought under R.C. 4112.02(I). In doing so, the court acknowledged an important modification to elements of a prima facie case for

proving retaliatory discrimination set forth above by stating: "the adverse action need not be employment-related, so the filing of a lawsuit or a counterclaim can constitute an adverse employment action in circumstances such as those in this case." *Greer–Burger* at ¶ 13, fn. 2.

{¶ 28} The United States Supreme Court's decision in *Burlington* modified the third and fourth elements of a prima facie case of an antiretaliation claim brought under R.C. 4112.02(I) when it stated that "[a] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it 'well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" *Burlington*, 548 U.S. 53, 126 S.Ct. at 2415, 165 L.Ed.2d 345, quoting *Rochon v. Gonzales* (C.A.D.C. 2006), 438 F.3d 1211, 1219, quoting *Washington v. Ill. Dept. of Revenue* (C.A.7, 2005), 420 F.3d 658, 662. It is fair to say that under an objective rather than subjective standard, having a lawsuit filed against oneself and having to take steps to defend it is "materially adverse." For as stated in *Burlington*, "[w]e speak of material adversity because we believe it is important to separate significant from trivial harms." Id.

{¶ 29} Therefore, applying the foregoing principles discussed by the Ohio Supreme Court in *Greer–Burger*, we are able to state that in order for a claimant worker to adequately set forth a prima facie case against a co-worker for retaliation for participation in a protected activity under R.C. 4112.02(I), his or her pleading must sufficiently set forth facts establishing the following four elements: (1) claimant engaged in a protected activity, (2) claimant's engagement in the protected activity was known to the opposing party, (3) the opposing party thereafter took adverse action against the claimant, and (4) there exists a causal connection between the protected activity and the adverse action. See *Greer–Burger*, citing *Canitia* at 1066, as modified by fn. 2.

{¶ 30} In the circumstances of this case, the adverse action alleged in the counterclaim is Hughes's filing of a complaint in the instant action against Miller, for what Miller alleges was protected activity; namely, her filing of an internal claim of sexual harassment against him with their mutual employer. Given the impact of *Burlington*, as recognized in *Greer–Burger*, and applying the other principles enunciated in *Greer–Burger*, an examination of the four corners of Miller's counterclaim as required in a review of a trial court's granting of a Civ.R. 12(B)(6) motion for failure to state a claim, reveals that Miller's counterclaim sufficiently sets forth facts establishing the last three elements of a prima facie case of a claim for retaliation under R.C. 4112.02(I).

PROTECTED ACTIVITY UNDER R.C. 4112.02(I)

{¶ 31} The determinative issue presented in the instant appeal of the trial court's sua sponte dismissal of Miller's counterclaim is whether, after taking the

factual allegations of the pleading as true, it sufficiently sets forth the first element of a prima facie cause of action for violation of a protected activity under R.C. 4112.02(I) set forth above. The following two recently decided cases give insight and guidance in interpreting the ever-evolving case law regarding workplace discrimination and antiretaliation claims: the Ohio Supreme Court's decision in *Ohio Civ. Rights Comm. v. Akron Metro. Hous. Auth.*, 119 Ohio St.3d 77, 2008-Ohio-3320, 892 N.E.2d 415, and the United States Supreme Court decision in *Crawford v. Metro. Govt. of Nashville* (2009), —— U.S. ——, 129 S.Ct. 846, 172 L.Ed.2d 650, decided January 26, 2009, three days after the oral argument in the instant appeal. A review of these cases assists us in determining that Miller's counterclaim did in fact sufficiently set forth the first element of an antiretaliation suit under R.C. 4112.02(I), namely, that she as claimant participated in "protected activity" and that her counterclaim was improperly dismissed by the trial court.

{¶ 32} In Miller's counterclaim, she alleges that "the act of filing an internal complaint is protected activity as defined by R.C. 4112.02(I)." The parties did not cite any case specifically addressing whether the filing of a formal yet internal complaint of sexual harassment, by one co-worker against another with their mutual employer, falls within the umbrella of protected activity contemplated by R.C. 4112.02(I). At oral argument, Miller's counsel argued that her action of filing a formal, internal complaint with TRI–C is protected activity under both clauses of R.C. 4112.02(I), as reflected in *Crawford* and described as the "opposition clause" and the "participation clause." The parties at oral argument focused at length on the language and grammar of R.C. 4112.02(I) in support of their respective positions as to whether Miller's action in filing an internal complaint with her employer regarding Hughes's alleged sexual harassment is encompassed within either clause as "protected activity."

{¶ 33} The United States Supreme Court in *Crawford* stated that an employee's filing of an internal complaint with an employer constitutes protected activity under the opposition clause of the Title VII's antiretaliatory provision, protecting the employee who discloses sexual harassment in such a manner from retaliatory conduct by the employer. In fact, the holding of *Crawford* makes it clear that protection under the "opposition clause" of antiretaliation statutes is not limited to cases where an employee initiates an internal complaint protesting sexual harassment. The court found that the "opposition clause" extends protection to an employee who opposes sexual discrimination stemming from sexual harassment, not by initiating a complaint but by answering questions posed to her during an employer's internal investigation. "There is, then, no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not

one who reports the same discrimination in the same words when her boss asks a question." Id., —— U.S. at ——, 129 S.Ct. at 851, 172 L.Ed.2d 650.

R.C. 4112.02(A) EMPLOYMENT DISCRIMINATION ON THE BASIS OF SEX

 {¶ 34} The Ohio Supreme Court in *Akron Metro. Hous. Auth.*, 119 Ohio St.3d 77, 2008-Ohio-3320, 892 N.E.2d 415, made it clear that R.C. 4112.02(A), though not explicitly, nevertheless proscribes certain unlawful discriminatory practices by employers in failing to take corrective action in response to an employee's opposition to a co-worker's sexual harassment. The court explained that this holding is based on applicable federal case law and negligence and agency principles, so that any such proven failure is tantamount to employer discrimination on the basis of sex.

> An employer may be held liable for a nonsupervisory employee's sexual harassment of his co-worker if the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. * * *

> This court first recognized that an employer may be held liable for failing to take corrective action in response to co-worker sexual harassment in *Hampel* [*v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 729 N.E.2d 726]. The court in *Hampel* established the following elements for a hostile-environment sexual-harassment claim: "(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment', and (4) that either (a) the harassment was committed by a supervisor, or (b) *the employer through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.*" (Emphasis added.) Id. at paragraph two of the syllabus.

> The statutory language at issue in *Hampel* did not explicitly recognize a cause of action against an employer for failing to take corrective action in response to co-worker sexual harassment. R.C. 4112.02(A) provides only that it is an unlawful discriminatory practice "[f]or any employer, because of the * * * sex * * * of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

*Akron Metro* at ¶ 14–16.

{¶ 35} Because of the trial court's sua sponte dismissal of her counterclaim, Miller was deprived of the opportunity to present evidence demonstrating that this prohibited type of employment discrimination was within the parameters of

the allegations of her counterclaim and that it was in fact the type of unlawful discriminatory practice under R.C. 4112.02(A) that she was opposing.

{¶ 36} Miller claims that Hughes discriminated against her by filing the complaint in this case because she opposed what she alleged was an unlawful discriminatory practice set forth in R.C. 4112.02. Under notice pleading, Miller must be given the opportunity to survive dismissal of her counterclaim in order to prove by a preponderance of the evidence that she was opposing a hostile work environment attributable to sexual harassment by her co-employee, Hughes, rising to the level of sex discrimination *if* her employer "through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Akron Metro. Hous. Auth.*, 119 Ohio St.3d 77, 2008-Ohio-3320, 892 N.E.2d 415, at ¶ 14. The counterclaim alleges that TRI–C disciplined Hughes for harassing Miller. There remains a question of fact as to whether the corrective action taken against Hughes by TRI–C, as alleged in the counterclaim, was in fact immediate and appropriate, and hence, whether Miller can ultimately establish an unlawful discriminatory practice in the instant case by producing evidence demonstrating that her employer failed to take immediate and appropriate corrective action in response to her activity of opposing Hughes's alleged sexual harassment.

{¶ 37} Mindful of the principle set forth in R.C. 4112.08 that "[t]his chapter shall be construed liberally for the accomplishment of its purposes," when examining language utilized by the legislature in enacting R.C. 4112.02(I), we find Miller's counterclaim sufficiently sets forth allegations as to the first element of the prima facie case of retaliatory conduct under R.C. 4112.02(I), under its opposition clause. Just as did the United States Supreme Court in *Crawford,* we find that such a finding makes it unnecessary to decide the question as to whether the filing of an internal, formal complaint with a claimant's employer falls, as alleged in Miller's counterclaim, within the purview of the second clause of the applicable antiretaliation statute, the participation clause, "because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." R.C. 4112.02(I).

## R.C. 4112.02(G) PUBLIC ACCOMMODATIONS

{¶ 38} Miller did not specify in her counterclaim the specific section or subdivision describing the unlawful discriminatory practice that she had opposed by filing her internal complaint with her employer. Nor did the trial court in its journal entry sua sponte dismissing Miller's counterclaim for failure to state a claim state its analysis as to what sections or subdivisions describing unlawful discriminatory practice were or were not applicable.

{¶ 39} In addition to the protected activity covered by R.C. 4112.02(I), which was the focus of the parties' arguments herein, we also find that the allegations of Miller's counterclaim sufficiently set forth a claim for retaliation based on her opposition of other "protected activity," that is, another unlawful discriminatory practice set forth in the Ohio Civil Rights Commission Chapter, not discussed by the parties.

{¶ 40} A review of the specific language of R.C. 4112.02 reveals that the statutory prohibition of opposing any unlawful discriminatory practice involving sexual harassment is largely limited to the unlawful practice of an *employer's* discrimination on the basis of sex, or permitting sexual harassment under R.C. 4112.02(A). However, in certain situations, R.C. 4112.02(G) specifically proscribes an *employee* from participating in the unlawful discriminatory practice described in that subsection.

{¶ 41} R.C. 4112.01 states:

(A) As used in this chapter:

* * *

(8) "Unlawful discriminatory practice" means any act prohibited by section 4112.02, 4112.021, or 4112.022 of the Revised Code.

{¶ 42} A review of those sections reveal that the following language of R.C. 4112.02 describes a protected discriminatory practice that includes the activity described in Miller's counterclaim.

{¶ 43} R.C. 4112.02 states:

It shall be an unlawful discriminatory practice:

* * *

(G) For any proprietor or any *employee*, keeper, or manager *of a place of public accommodation to deny to any person, except for reasons applicable alike to all persons regardless of* race, color, religion, *sex*, * * * national origin, disability, age * * * or ancestry, *the full enjoyment of the accommodations, advantages, facilities, or privileges of the place of public accommodation.*

(Emphasis added.)

{¶ 44} The following definition of "place of public accommodation" is found in R.C. 4112.01(A)(9):

"Place of public accommodation" means any inn, restaurant, eating house, barbershop, public conveyance by air, land, or water, theater, store, other place for the sale of merchandise, or any other place of public accommodation or amusement of which the accommodations, advantages, facilities, or privileges are available to the public.

{¶ 45} The Ohio Supreme Court stated that "R. C. 4112.02(G) and 4112.01(I) are remedial statutes * * * and the courts, upon review, are to construe those statutes liberally in order to effectuate the legislative purpose and fundamental policy implicit in their enactment, and to assure that the rights granted by the statutes are not defeated by overly restrictive interpretation. R.C. 4112.08; R.C. 1.11." *Ohio Civ. Rights Comm. v. Lysyj* (1974), 38 Ohio St.2d 217, 220, 67 O.O.2d 287, 313 N.E.2d 3. We conclude that Miller's counterclaim could also be based on her opposition to Hughes engaging in an unlawful discriminatory practice within the meaning of R.C. 4112.02(G) and 4112.01(I).

{¶ 46} Certainly, TRI–C is a place of public accommodation as defined under R.C. 4112.01(A)(9). Miller's counterclaim alleges that an employee of TRI–C, a place of public accommodation, denied to her as a person the full enjoyment of the accommodations, advantages, facilities, or privileges of TRI–C, for reasons other than those applicable to all persons regardless of race, color, religion, *sex*, national origin, disability, age, or ancestry.

{¶ 47} Taking the allegations of the counterclaim as true, there remains a question as to whether Hughes's conduct, based on Miller's sex, denied to her the full enjoyment of the accommodations, advantages, facilities, or privileges of TRI–C that Hughes, as an employee of TRI–C, would provide to others. If so, such conduct would be an actionable form of discrimination under R.C. 4112.02(G). Hence, we find that Miller's counterclaim also states a claim for Hughes's retaliatory conduct against her opposition to Hughes engaging in an unlawful discriminatory practice within the meaning of R.C. 4112.02(G) and the opposition clause of R.C. 4112.02(I).

{¶ 48} The trial court improperly denied Miller the opportunity to present evidence meeting the standard for determining whether there has been unlawful discrimination pursuant to R.C. 4112.02(G). *Lysyj*, 38 Ohio St.2d at 221, 67 O.O.2d 287, 313 N.E.2d 3.

> When determining whether there has been unlawful discrimination under R.C. 4112.02(G), the test is simply whether the proprietor, keeper, manager or *employee* of a place of public accommodation has denied to any person the full enjoyment of such place for reasons not applicable alike to all persons, irrespective of race, color, religion, national origin or ancestry.

*Lysyj* at 221, 67 O.O.2d 287, 313 N.E.2d 3.

{¶ 49} For the foregoing reasons, we conclude, based on the allegations of the counterclaim, applicable statutes, and case law, that the trial court, by its sua sponte dismissal, improperly precluded Miller from presenting evidence at trial, demonstrating by a preponderance of the evidence her claim for retaliation for participation in protected activity.

{¶ 50} Miller's sole assignment of error is sustained.

{¶ 51} This matter is remanded in order to determine if Miller was damaged, as alleged in her pleading, as a direct and proximate result of Hughes's action in filing his since dismissed complaint for defamation against her in violation of R.C. 4112.02(I).

{¶ 52} The judgment is reversed, and the cause is remanded for proceedings consistent with this opinion.

Judgment accordingly.

MCMONAGLE and SWEENEY, JJ., concur.